FILED
 2014 Aug-13  PM 03:41
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **KIMBERLY N. O'NEAL**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **1:13-cv-1772-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **ACTING COMMISSIONER OF** ) | |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION**, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Kimberly N. O'Neal brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the adverse decision of the Administrative Law Judge ("ALJ"), which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). For the reasons stated below, the ALJ's decision, specifically his decision to assign little weight to some of the medical opinions of Dr. Robert A. Storjohann, was supported by substantial evidence and the ALJ applied the proper legal standards in making his determinations. Therefore, the Commissioner's decision is affirmed.

## I. Procedural History

O'Neal protectively filed her application for Supplement Social Security Income ("SSI") on September 25, 2009, alleging a disability onset date of January 15, 2009, (R. 143), due to arthritis, diabetes, and high blood pressure, (R. 149). After the SSA denied her application on December 30, 2009 (R. 99–104), O'Neal requested a hearing, (R. 107). At the time of the hearing on June 8, 2011, O'Neal was forty years old, (R. 37), and had an eleventh grade education, (R. 40–41). O'Neal had no past relevant work. (R. 26). O'Neal has not engaged in substantial gainful activity since September 25, 2009, her application date. (R. 17).

The ALJ denied O'Neal's claim on February 13, 2012, (R. 12–31), which became the final decision of the Commissioner when the Appeals Council refused to grant review on September 5, 2013, (R. 1–7). O'Neal then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that O'Neal had not engaged in substantial gainful activity since the alleged onset of her disability, and therefore met Step One.  (R. 17).  Next, the ALJ acknowledged that O'Neal's severe impairments of obesity, diabetes mellitus type 2, hypertension, osteoarthritis of the bilateral knees and bilateral hands/wrists, major depressive disorder, and borderline intellectual functioning met Step Two. (R. 17–20). The ALJ also noted that O'Neal had the non-severe impairment of chronic back pain. (R. 19).  The ALJ then proceeded to the next step and found that O'Neal did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 20).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that O'Neal

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following exceptions: she could lift 20 pounds occasionally and 10 pounds frequently; she could sit for six hours of an eight-hour workday; she could stand/walk for two hours of an eight-hour workday; she would need a sit/stand option; she is precluded from work around unprotected heights; she must avoid hazardous machinery; she could only occasionally operate foot or leg controls; she is precluded from any repetitive fingering such as keyboarding for more than five minutes at a time; she is precluded from repetitive overhead lifting and reaching; and she is limited to the performance of non-complex job tasks.

(R. 23). Lastly, in Step Five, the ALJ considered O'Neal's age, education, work experience, and RFC, and determined, based on the Medical Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2, section 202.17 and on the testimony of a vocational expert ("VE"), that "there are jobs that exist in significant numbers in the national economy that [O'Neal] can perform." (R. 26–27). Because the ALJ answered Step Five in the negative, he determined that O'Neal was not disabled. (R. 27).

## V. Analysis

O'Neal's sole contention is that the ALJ improperly rejected Dr. Robert Storjohann's medical opinions.[1] Doc. 9 at 17. As a preliminary matter, the court notes the parties agree that the ALJ inappropriately noted that O'Neal paid for Dr.

---

[1] At the hearing before the ALJ, the VE testified that a person with the degree of limitations ascribed to O'Neal in either of Dr. Storjohann's reports would be unable to perform any jobs that exist in the national economy. (R. 59–62).

Storjohann's second examination. Doc. 9 at 17–19; doc. 12 at 15. Moreover, the court agrees with O'Neal that the ALJ's remarks can be construed to imply that Dr. Storjohann's second examination is suspect because O'Neal presumably procured it to generate evidence in support of her claim.[2] *See* doc. 9 at 17–18. However, the court finds that, at worst, these remarks were harmless error, because, as discussed below, the ALJ correctly assigned little weight to Dr. Storjohann's findings because they were inconsistent with the rest of the record.

Dr. Storjohann conducted psychological evaluations of O'Neal in October 2008 and June 2010, and produced a report in conjunction with each evaluation. *See* (R. 250–53; 401–13). Following the October 2008 examination, based on O'Neal's account of her personal history and daily activities and his observations of her mental status, Dr. Storjohann diagnosed O'Neal with chronic, severe post-traumatic stress disorder and recurrent, severe major depression without psychotic

---

[2] The ALJ's full remarks concerning the provenance of Dr. Storjohann's second examination and report are as follows:

> Furthermore, I note the claimant underwent the examination with Dr. Storjohann in June 2010 not in an attempt to seek treatment for symptoms, but rather through attorney referral and in connection with an effort to generate evidence for the current appeal. Dr. Storjohann was presumably pai[d] for the report. Although such evidence is certainly legitimate and deserves my due consideration, the context in which it was produced cannot be entirely ignored, especially where, as here, it is not consistent with or supported by the rest of the record.

(R. 25).

features. (R. 253). Dr. Storjohann noted that "[b]ased on the results of this evaluation, . . . O'Neal appears to have moderate deficits in her ability to understand, carry out, and remember instructions in a work setting. She appears to have marked deficits in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting." *Id*. Following the June 2010 examination, based on O'Neal's account of her personal history and daily activities, his observations of her mental status, and the results of several psychological tests, Dr. Storjohann once again diagnosed O'Neal with chronic, severe post-traumatic stress disorder and recurrent, severe major depression without psychotic features and proffered the additional diagnoses of generalized anxiety disorder, borderline intellectual functioning, and personality disorder NOS, mixed type. (R. 408). Dr. Storjohann noted that

> [b]ased on the results of this evaluation, . . . O'Neal appears to have moderate to marked deficits in her ability to understand, carry out, and remember instructions in a work setting. She appears to have marked to extreme deficits in her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting.

*Id*.

When deciding what weight to afford a medical opinion, an ALJ must consider whether the opinion is consistent with the rest of the record. *See* 20 C.F.R. § 416.927(c)(4) (stating that "[g]enerally, the more consistent an opinion is

with the record as a whole, the more weight we will give to that opinion"). Here, the ALJ properly assigned little weight to Dr. Storjohann's reports because he thoroughly explained that of both Dr. Storjohann's diagnoses and findings concerning O'Neal's limitations were inconsistent with the rest of the record. With regards to the diagnoses, the ALJ concluded that Dr. Storjohann's diagnosis of major depressive disorder was consistent with the record[3] because "Dr. [Jarod] Speer, her primary care physician, has diagnosed her with depression and treated her with psychiatric medications," (R. 18) (citing (R. 341–58; 386–399; 448–517)), and that Dr. Storjohann's diagnosis of borderline intellectual

---

[3] O'Neal contends that the ALJ erred in assigning significant weight to Dr. Robert J. Kline's opinions concerning her functional limitations because Dr. Kline concluded that O'Neal did not suffer from a diagnosable mental impairment, yet the ALJ concluded that O'Neal suffers from the severe impairments of major depressive disorder and borderline intellectual functioning. Doc. 9 at 7 (citing R. 17, 23, 25). Pursuing this argument further, O'Neal seems to contend that the ALJ erred by "follow[ing] Dr. Storjohann's report for the diagnoses but follow[ing] Dr. Kline's report (with no psychological diagnosis) for the restrictions." *Id*. at 16. O'Neal's arguments are flawed for two reasons. First, she provides no legal authority for her position that an ALJ must accept or reject a medical opinion in its entirety. Second, she mischaracterizes the ALJ's reasoning regarding O'Neal's major depressive disorder. The ALJ did not conclude that O'Neal suffers from the severe impairment of major depressive disorder because of Dr. Storjohann's diagnosis. The ALJ reached his conclusion based in part on Dr. Storjohann's diagnosis, *which was consistent with the opinion of O'Neal's treating physician*. *See* (R. 18) (stating that "Dr. Speer, [O'Neal's] primary care physician, has diagnosed her with depression and treated her with psychiatric medications"); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997) (explaining that "[t]he opinion of a treating physician . . . 'must be given substantial or considerable weight unless "good cause" is shown to the contrary'"). The ALJ further noted that by discounting the opinion of Dr. Kline, who found that O'Neal presented with "at most[,] very mild symptoms of depression," he was "giving O'Neal] the benefit of any reasonable doubt [by] including] major depressive disorder as a severe impairment." (R. 18).

functioning was consistent with the record because O'Neal "left school in eleventh grade and reported a history of special education," *id*., and "a December 2009 Psychiatric Review Technique Form completed by a State agency psychological consultant . . . found upper end borderline intellectual functioning," *id*. (citing (R. (365–78)). However, the ALJ concluded that Dr. Storjohann's diagnoses of post-traumatic stress disorder, generalized anxiety disorder, and personality disorder NOS mixed type were not supported by the rest of the record. (R. 19). The ALJ noted that O'Neal's

> [post-traumatic stress disorder] diagnosis was based on her allegations that she was physically and emotionally abused by her mother; sexually molested by her mother's boyfriend; physically and/or emotionally abused by her ex-husbands; witnessed her second husband being short six times by his girlfriend; and was raped resulting in the birth of her second child. [*See* (R. 402–03).] Although the claimant raised these allegations with Dr. Storjohann, she mysteriously did not raise any such allegations with Dr. Kline[, citing (R. 359–61).] Indeed, it does not appear that the claimant raised these allegations with Dr. Speer, although he was her primary care physician, she saw him several times a month, and he was treating her for depression, [citing (R. 341–58; 386–99; 448–517).]

(R. 19). Although the court acknowledges the serious and disturbing nature of O'Neal's allegations, the fact remains that the ALJ is correct that they are not reflected anywhere else in the record.  Similarly, the ALJ noted that Dr. Storjohann's "generalized anxiety disorder and personality disorder diagnoses are based on very subjective reports and limitations provided by [O'Neal]," *id*. (citing

(R. 250–53; 400–22)), and that "[O'Neal] did not report such symptoms and limitations to Dr. Kline or Dr. Speer," *id*. (citing (R. 341–61; 386–99; 448–517)). Additionally, the ALJ noted that, at the hearing before the ALJ, O'Neal and her representative each stated O'Neal suffered from depression when discussing O'Neal's disabling impairments, but failed to indicate O'Neal suffered from any additional psychological condition, *id*., and that O'Neal "did not even allege any mental impairments in her initial Disability Report or her Disability Report on appeal," (R. 19–20). Moreover, the ALJ noted O'Neal "has received no inpatient or outpatient mental health treatment"—she did not seek it herself, even though "[i]t is clear from the record [O'Neal] is capable of seeking medical services when she deems it necessary," and "[t]here is no indication whatsoever that Dr. Speer, her primary care physician, was concerned enough to refer [O'Neal] for mental health treatment," (R. 20). In sum, the ALJ concluded that, "outside of Dr. Storjohann's reports, there simply is no other evidence in the record to support the claimant's alleged mental symptoms or Dr. Storjohann's extreme diagnoses." (R. 20). Based on its own review of the record, the court concludes the ALJ correctly determined that Dr. Storjohann's diagnoses of post-traumatic stress disorder, generalized anxiety disorder, and personality disorder NOS mixed type are not supported the rest of the record, and consequently that the ALJ properly assigned

them little weight.

The ALJ discounted Dr. Storjohann's findings regarding the functional limitations associated with O'Neal's mental health conditions for similar reasons. As a preliminary matter, he noted "[a]t the hearing, the claimant alleged that she could not work primarily because of her arthritis and associated pain." (R. 24). The court notes that while, at the hearing, O'Neal did state that her depression was a problem that kept her from working, she did not elaborate, in contrast to her description of the mobility limitations and pain associated with her arthritis. (R. 47–48). The ALJ again noted that, in spite of the severe mental health symptoms O'Neal described to Dr. Storjohann, O'Neal failed to seek out mental health treatment, in contrast to her extensive efforts to seek treatment for her other health problems, and that "Dr. Speer, [O'Neal's] primary care physician[,] who saw [O'Neal] several times a month and was treating her for depression [never] was concerned enough to refer [O'Neal] for mental health treatment." (R. 25). The court notes that Dr. Speer did refer O'Neal to at least one non-mental healthcare specialist. *See* (R. 519) (noting that Dr. Speer referred O'Neal to an orthopedic specialist). Finally, the ALJ noted that "the claimant presented to Dr. Kline with at most mild symptoms of depression and reported non of the severe symptoms she reported to Dr. Storjohann." (R. 25). Based on these reasons and its own review of

the record, the court concludes the ALJ correctly found that the record does not support Dr. Storjohann's opinions that O'Neal's mental impairments subjected her to drastic functional limitations, and consequently that the ALJ properly assigned them little weight.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that O'Neal is not disabled is supported by substantial evidence and applied correct legal standards. Therefore, the Commissioner's final decision is remanded for further proceedings consistent with this opinion. The court will enter a separate order in accordance with this memorandum of decision.

Done this 13th day of August, 2014.

_____

**ABDUL K. KALLON**

UNITED STATES DISTRICT JUDGE